**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY THOMAS CUMMINS,                    No. C-05-0999 MMC

            Petitioner,                    **ORDER DENYING PETITION FOR WRIT
                                           OF HABEAS CORPUS**

     v.

A. KANE, Warden, et al.,

            Respondents.
_____/

     Petitioner Jeffrey Thomas Cummins, a California prisoner incarcerated at the

California Training Facility Soledad, filed the above-titled petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging the June 2, 2004 decision by the

California Board of Prison Terms ("Board") that petitioner is unsuitable for parole.[1]

Respondent has filed an answer; petitioner has filed a traverse.  Having considered the

papers filed in support of and in opposition to the petition, the Court rules as follows.

                              **BACKGROUND**

     In 1984, in the California Superior Court for the County of Riverside, petitioner was

convicted of second degree murder and sentenced to state prison for a term of 15 years to

life.  (See Pet. at 7; Answer Ex. 1.)  On June 2, 2004, the Board, for the seventh time,

_____

     [1] Although petitioner initially appeared pro se in this action, he is now represented by
counsel.

1    found petitioner unsuitable for parole, pursuant to California Penal Code § 3041(b).  (See

2    id. Ex. 2 (transcript of June 2, 2004 parole hearing) at 37:8-40:11.) In particular, the Board

3    found as follows:

> First we have the commitment offense.  It was carried out in an especially
> violent and brutal manner.  The offense was carried out in a manner which
> demonstrates a disregard for human suffering.  The victim was repeatedly
> beaten by the prisoner with a blunt object until dead.  These conclusions are
> drawn from the Statement of Facts wherein the prisoner and the victim, Carl
> Ronald Mazza, M-A-Z-Z-A, were roommates for a period of time. During an
> argument the prisoner repeatedly hit the victim in the head with a blunt
> object resulting in his death.  The body was then placed in the trunk of a small
> vehicle and left in Palm Desert, California, in August.  It was found three or
> four days later in a deteriorated condition.  The prisoner has an unstable
> social history from the 1990 Psychological Evaluation of Dr. White the Clinical
> Psychologist.  On page one he states, quote,
>
>> '[Cummins] reports a juvenile history of trading homosexual behavior
>> for money.  Later as he got older he and other juvenile crime partners
>> used to pick up gay men and take their money by intimidation.  A
>> typical scenario would see one of them getting in the back of the
>> victim's car with the victim while the second would drive the car.  The
>> driver would accelerate to high speed whereupon the victim would be
>> ordered to hand over his money.  When he complied, the two crime
>> partners would return control of the car to the victim and depart.  As an
>> adult inmate Cummins would frequent gay bars where he was a pool
>> hustler and on the lookout for vulnerable homosexual men on whom he
>> exercised predatory and exploitive behavior.'
>
> Institutional behavior.  The prisoner has programmed in a limited manner
> while incarcerated. He has failed to upgrade vocationally as previously
> recommended by the Board.  The Panel realizes that he does have an
> employable skill as an electrician, but feels that he needs other skills to be
> successful on parole.  The prisoner has not sufficiently participated in
> beneficial self-help programs.  During the past two years he has only taken or
> seen a three-hour video entitled Reintegration Into Society.  In the 1990
> Psych Evaluation he described himself to Dr. White as a stone-alcoholic for
> the past 10 years.  Therefore the Panel feels that more participation in
> substance abuse and self-help programs is necessary.  His parole plans were
> fine.  The Hearing Panel notes that in response to the 3042 Notices the
> District Attorney's Office of Riverside County participated in the hearing today
> by video conference and was opposed to parole at this time.  The Panel
> makes the following findings: the prisoner needs to continue to participate in
> self-help to face, discuss, understand, and cope with stress in a non-
> destructive manner.  Until progress is made the prisoner continues to be
> unpredictable and a threat to others.  Nevertheless the prisoner should be
> commended for receiving no 115s since 1993, obtaining a GED in 1987,
> receiving above-average work reports in the PIA and Maintenance as a lead
> electrician.  He also participated in a three-hour video, Successful
> Reintegration Into Society.  However, these positive aspects of his behavior
> do not yet outweigh the factors of unsuitability.

(See id. at 37:13-40:11.)

1    Petitioner challenged the Board's June 2, 2004 denial of parole in habeas petitions

2  filed in the California Superior Court for the County of Riverside, the California Court of

3  Appeal, and the California Supreme Court; each petition was denied.  (See Petition at 4-5;

4  Answer Exs. 6-7.)

5    Petitioner thereafter filed the instant petition, wherein he argues the Board's decision

6  violates his liberty interest in being released on parole, as protected by the federal

7  constitutional right to due process.

8                                    **LEGAL STANDARD**

9    Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

10  federal court may grant a petition for a writ of habeas corpus if the adjudication of the claim

11  in state court "(1) resulted in a decision that was contrary to, or involved an unreasonable

12  application of, clearly established Federal law, as determined by the Supreme Court of the

13  United States; or (2) resulted in a decision that was based on an unreasonable

14  determination of the facts in light of the evidence presented in the State court proceeding."

15  See 28 U.S.C. § 2254(d).

16    A decision is "contrary to" clearly established federal law "if the state court applies a

17  rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state

18  court confronts a set of facts that are materially indistinguishable from a decision of [the

19  Supreme Court] and nevertheless arrives at a result different from [Supreme Court]

20  precedent."  See Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor,

21  529 U.S. 362, 405-06 (2000)).  An "unreasonable application" of federal law occurs "if the

22  state court identifies the correct governing legal principle from the [Supreme Court's]

23  decisions but unreasonably applies that principle to the facts of the prisoner's case."  See

24  id. at 75.  "The 'unreasonable application' clause requires the state court decision to be

25  more than incorrect or erroneous."  Id.  "The state court's application of clearly established

26  law must be objectively unreasonable."  Id.  An "unreasonable determination of the facts"

27  occurs where "an appellate panel, applying the normal standards of appellate review, could

28  not reasonably conclude that the finding is supported by the record" or "that the state

3

1  court's fact-finding process was adequate."  See Taylor v. Maddox, 366 F.3d 992, 1000

2  (2004).

3  **DISCUSSION**

4  Petitioner argues that the Board deprived him of his liberty interest in parole in

5  violation of due process by "denying him parole based on the unchanging circumstances of

6  his offense" and "ignoring the evidence of his rehabilitation programming and continued

7  exemplary behavior while in prison."  (See Petition at 5.)

8  "A procedural due process claim has two distinct elements: (1) a deprivation of a

9  constitutionally protected liberty or property interest, and (2) a denial of adequate

10  procedural protections."  See McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002)

11  (quoting Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir.

12  1998).  Pursuant to "clearly-established" Supreme Court case law, "'California's parole

13  scheme gives rise to a cognizable liberty interest in release in parole.'"  Sass v. California

14  Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) (quoting McQuillion, 306 F.3d

15  at 902).  Deprivation of a prisoner's liberty interest in parole comports with due process if

16  "'the findings of the . . . board are supported by some evidence in the record.'"  See Sass,

17  461 F.3d at 1128 (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

18  "To determine whether the some evidence standard is met 'does not require

19  examination of the entire record, independent assessment of the credibility of witnesses, or

20  weighing of the evidence.'"  See Sass, 461 F.3d at 1128 (quoting Hill, 472 U.S. at 455-56).

21  Indeed, there is no requirement that all of the Board's findings be supported by "some

22  evidence."  See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003) (affirming Board's

23  decision to deny parole "in spite of the fact that several of the Board's findings were

24  unsupported").  "'Instead, the relevant question is whether there is any evidence in the

25  record that could support the conclusion reached by the . . . board.'"  See Sass, 461 F.3d at

26  1128 (quoting Hill, 472 U.S. at 455-56).  The Ninth Circuit has stressed that the "some

27  evidence standard is minimal"; it "assures that 'the record is not so devoid of evidence that

28  the findings of the . . . board were without support or otherwise arbitrary.'"  See id. at 1129

4

1  (quoting <u>Hill</u>, 472 U.S. at 457).[2]

2      Petitioner argues that the Board lacked sufficient evidence to support its decision to

3  deny parole.  Pursuant to California Penal Code § 3041, "[t]he panel or the board . . . shall

4  set a release date unless it determines that the gravity of the current convicted offense or

5  offenses, or the timing and gravity of current or past convicted offense or offenses, is such

6  that consideration of the public safety requires a more lengthy period of incarceration[.]"

7  <u>See</u> Cal. Pen. Code § 3041(b).

8      The criteria for determining whether an inmate who committed murder is suitable for

9  parole are set forth in Title 15, § 2402, of the California Code of Regulations.  The opening

10  paragraph of § 2402(a) states: "Regardless of the length of time served, a life prisoner shall

11  be found unsuitable for and denied parole if in the judgment of the panel the prisoner will

12  pose an unreasonable risk of danger to society if released from prison."  <u>See</u> Cal. Code

13  Regs. tit. 15, § 2402(a).  In determining suitability for parole, the panel shall consider all

14  relevant and reliable information available to it, including prisoner's social history, past and

15  present mental state, past criminal history, commitment offenses, past and present attitude

16  toward the crime[s], "any conditions of treatment or control," and any other information that

17  bears on the prisoner's suitability for release.  <u>See id</u>. § 2402(b).  "Circumstances which

18  taken alone may not firmly establish unsuitability for parole may contribute to a pattern

19  which results in a finding of unsuitability."  <u>Id</u>.

20      Circumstances "tending to indicate unsuitability" for parole include the following:

21  (1) Commitment Offense. The prisoner committed the offense in an especially
heinous, atrocious or cruel manner. The factors to be considered include:

22

23          (A) Multiple victims were attacked, injured or killed in the same or
separate incidents.

24          (B) The offense was carried out in a dispassionate and calculated
manner, such as an execution-style murder.

25

26          (C) The victim was abused, defiled or mutilated during or after the

27      [2] Although both parties argue, albeit for different reasons, that the "some evidence"

28  standard should not apply to denials of parole, this Court is bound by the Ninth Circuit's
holdings to the contrary.

offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

See Cal. Code Regs. tit. 15, § 2402(c).

Circumstances "tending to indicate suitability" for parole include the following:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic

6

1    plans for release or has developed marketable skills that can be put to use
2    upon release.

     (9) Institutional Behavior. Institutional activities indicate an enhanced ability to
3    function within the law upon release.

4    See Cal. Code Regs. tit. 15, § 2402(d).

5         Here, as noted, the Board denied parole on the grounds that (1) petitioner's crime

6    was "especially violent and brutal," (2) petitioner has an "unstable social history" that

7    includes a  history of "predatory and exploitive behavior" against homosexual men,

8    (3) petitioner failed to "upgrade vocationally as previously recommended by the Board," and

9    (4) petitioner "has not sufficiently participated in beneficial self-help programs," noting in

10   particular that "more participation in substance abuse and self-help programs is necessary."

11   (See Answer Ex. 2 at 37-39.)  Although the Board recognized that petitioner's "parole plans

12   were fine" and that he "should be commended for receiving no 115s since 1993, obtaining

13   a GED in 1987, and receiving above-average work reports," the Board found "these

14   positive aspects of his behavior d[id] not yet outweigh the factors of unsuitability."  (See id.

15   at 39-40.)

16        Petitioner argues that the Board improperly relied on the unchanging circumstances

17   of his commitment offense, his prior history of substance and alcohol abuse, and his

18   conduct prior to conviction of the commitment offense.  In particular, petitioner contends the

19   Board failed to properly consider that (1) he has been discipline-free for more than eleven

20   years, alcohol-free for more than twenty years, and substance-free for more than fifteen

21   years, (2) he upgraded his vocational skills while in prison, (3) a California Department of

22   Corrections Custody Counselor found petitioner would pose a low degree of threat to the

23   public if released from prison, and (4) a February 2004 Psychological Evaluation prepared

24   for the Board estimated that if petitioner were released to the community, his potential for

25   violence would be no higher than the average citizen in the community.

26        The Ninth Circuit has affirmed denial of parole based solely on the facts of a

27   petitioner's commitment offense and other pre-conviction behavior.  In Biggs, for example,

28   the Ninth Circuit upheld the Board's denial of parole fourteen years after conviction, based

7

1   solely on "the gravity of the offense and conduct prior to imprisonment."[3]  See Biggs, 334

2   F.3d at 916.  While acknowledging that the petitioner therein was "a model inmate" and

3   "ha[d] been crime and discipline free" for thirteen years," that "the record [was] filled with

4   reports of exemplary conduct as well as vocational and educational achievements for many

5   years," and that "several of the Board's findings were unsupported," the Ninth Circuit found

6   the Board's reliance on pre-imprisonment conduct was justified.  See id. at 916.  Likewise,

7   in Sass, the Ninth Circuit upheld the Board's decisions to deny parole, issued, respectively,

8   eleven and twelve years after conviction, although such decisions were based entirely "on

9   the gravity of [the petitioner's] convicted offenses in combination with his prior offenses."

10  See Sass, 461 F.3d at 1129.  In so holding, the Ninth Circuit observed that "[i]n making a

11  judgment call based on evidence of pre-conviction recidivism and the nature of the

12  conviction offense, the Board cannot be categorized as acting arbitrarily."[4]  See id.

13          In both Biggs and Sass, the Ninth Circuit did acknowledge that "continued reliance in

14  the future on an unchanging factor, the circumstance of the offense and conduct prior to

15  imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and

16  could result in a due process violation."  See Biggs, 334 F.3d at 917; Sass, 461 F.3d at

17  1129 (citing Biggs, 334 F.3d at 917) (emphasis omitted).  Here, petitioner's conviction

18  occurred twenty years prior to the challenged denial of parole, a period of time longer than

19  that at issue in either Biggs or Sass.  Nevertheless, at that time, petitioner had been

20  discipline-free for only eleven years, a period shorter than the thirteen years of discipline-

21  free behavior the Ninth Circuit considered but did not find persuasive in Biggs.  See Biggs,

22  334 F.3d at 912.  Although petitioner's vocational accomplishments are commendable, the

23  _____

24          [3] At the time he was denied parole, Biggs was serving a sentence of 25 years to life
    for first degree murder as a result of his having been "present at the location during the
25  murder, pa[ying] money to the co-conspirators, and return[ing] with the killer in an attempt
    to better conceal the body."  See id. at 912.  Biggs also had a prior conviction for
26  "attempting to receive stolen computer parts."  See id.

27          [4] At the time he was denied parole, Sass was serving a sentence of 15 years to life
    for "second degree murder, gross vehicular manslaughter, hit and run death, causing injury
28  while driving under the influence, and felony drunk driving."  See id. at 1125.  Sass had
    seven prior convictions for driving under the influence.  See id. at 1126 n.2.

Ninth Circuit found Biggs's "vocational and educational achievements" insufficient to require a grant of parole.  See Biggs, 334 F.3d at 916.  Further, the petitioner in Biggs, like petitioner here, had received positive psychological reports.  See id.  Finally, although petitioner contends he has successfully overcome his prior problems with substance and alcohol abuse, the Board disagreed, noting, in particular, that in the previous two years, petitioner, despite his history of substance abuse, had participated in only one self-help program, a "three-hour video" on the general topic of reintegration.  (See Answer Ex. 2 at 39:10-19; see also id. at 41:23-43:12.)  In Sass, the Ninth Circuit upheld denial of parole where the petitioner therein had engaged in "years of extensive and successful participation in alcohol rehabilitation programs."  See Sass, 461 F.3d at 1130 (Reinhardt, dissenting).  In sum, the circumstances presented in the instant action are not materially distinguishable from those the Ninth Circuit has found insufficient to warrant the granting of habeas relief.

Accordingly, the Court finds the Board had "some evidence" to support its denial of parole and, consequently, "the state court decisions upholding the denial[ ] were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."  See Sass, 461 F.3d at 1129.

**CONCLUSION**

For the reasons set forth above, the petition for a writ of habeas corpus is hereby DENIED.

**IT IS SO ORDERED.**

Dated: February 13, 2007

MAXINE M. CHESNEY
United States District Judge

9